UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LATIFA OUDGHIRI,

    Plaintiff,

    v.                               Case No. 3:19-CV-1149 JD

SOUTH BEND COMMUNITY SCHOOL
CORPORATION,

    Defendant.

## OPINION AND ORDER

Plaintiff Latifa Oudghiri is employed by Defendant South Bend Community School Corporation ("SBCSC") as an assistant principal. In this lawsuit, she claims that SBCSC has discriminated against her because she is from Morocco and a Muslim by failing to promote her to a principal position and by paying her less than other assistant principals. She additionally claims that the failure to promote her was in retaliation for her filing a charge of discrimination with the EEOC. SBCSC moved for summary judgment on all her claims. For the reasons stated below, the Court will grant SBCSC's motion for summary judgment.

### A.  Facts

SBCSC is a public school corporation. Although designed to educate 24,000 students, it has had a steadily shrinking enrollment, accompanied by severe budgetary shortfalls. As a result, SBCSC has had to close several schools. Current enrollment is only 16,000 students. (DE 21 at 2.)

Ms. Oudghiri is an observant Muslim and is originally from Morocco. SBCSC hired her in 1997. She has been an assistant principal since 2012 working at the following schools:

- Jefferson Intermediate (2012–2016);

- Riley (2016–2017);

- Harrison (2017–2019);

- Monroe Elementary and Marquette Montessori Academy (2019–2020);

- Kennedy Academy (2020–present).

As an assistant principle, Ms. Oudghiri mainly handles student discipline but she has had other duties as well, such as being part of education meetings, case conferences, and teachers' evaluations. (DE 20-1 at 32.) For the most recent school year, Ms. Oudghiri was paid over $75,000, plus medical and other benefits as well as a contribution to a retirement plan. (DE 21 at 3.)

Initially, Ms. Oudghiri was passed over for the assistant principle position in 2011 and 2012, after which she filed a charge of discrimination with the EEOC against SBCSC. She believed that then-superintendent of schools, Dr. Schmidt, discriminated against her on the basis of her national origin or religion because a staff member of Dr. Schmidt's office told her that Dr. Schmidt did not think the school was ready to have an Arabic bilingual program. (DE 25 at 6.) She had a meeting with Dr. Schmidt who did not respond to her accusation, but simply listened. (*Id*.) She later had an interview for the position and was hired as the assistant principle at Jefferson. She then dropped the charge.

Ms. Oudghiri worked at Jefferson from 2012 until 2016. Ms. Oudghiri submits that she was harassed during her time there. The secretary at the school, Joan Dawson, reported to her and Principal Byron Sanders, that she heard a teacher, who was unhappy with how Ms. Oudghiri handled a disciplinary matter, say: "She doesn't belong here. She doesn't understand our culture.

She needs to take her ass back to Africa." (*Id.* at 7.) The principal then disciplined the teacher.

(DE 21 at 7.) But according to Ms. Oudghiri, the secretary herself harassed her (DE 25 at 7):

> Like the secretary would come in and jokingly said to me, "So, you're part of Mr. Sanders' harem?' Because he was surrounded by females. His coach, instructional coach, was a female, his instructional literacy—we were all female around him. And I was his assistant. So she made that comment about his harem. And I called her onto that. I said, "This is inappropriate. Please don't use it again."

(DE 20-1 at 54–55.) After Ms. Oudghiri rebuffed the secretary, she stopped. (*Id.*)  The secretary

also made sarcastic comments when Ms. Oudghiri would request her religious days off: "She

would say things like, 'Again?' Or, you know, like the—the tone of the voice she used, like, you

know, I was kind of privileged taking those days off. And I again told her that she was welcome

to join me and take days off is he wished to." (DE 20-1 at 55.)

On another occasion, someone asked Ms. Oudghiri in front of Principal Carmen Williams

(she replaced Principal Sanders at Jefferson) if she was going to take off Good Friday. Principal

Williams jumped in to say that "Latifa does not believe in Jesus." (DE 25 at 7.)

After Boko Haram kidnapped a group of Christian girls in Nigeria, a social studies

teacher asked Ms. Oudghiri to speak to the class about Boko Haram. Ms. Oudghiri did not know

anything about Boko Haram. She felt like she's "held responsible for all what's happening in the

Muslim world" (DE 20-1 at 58), but she admits that she does not know why she was asked to

speak to the class (*id*). Another teacher asked her to address a class regarding ISIS, but she

refused because she did not know anything about that organization. (*Id.*) Ms. Oudghiri did not

tell anyone in the administration about these requests. (DE 20-1 at 59.)

In May 2016, Ms. Oudghiri returned from an FMLA leave in Morocco with her ailing

mother. She was warmly greeted by a teacher who welcomed her back. The teacher later told her

that faculty members were upset with him for welcoming her. They also made racial comments about her. (DE 20-1 at 61–62.)

Also in 2016, now at Riley, after a terrorist incident, a school resource officer told her that he had "a problem with you Muslims who call yourself in the middle, moderate, [and] have not taken a stand and denounced terrorism." (DE 21 at 8.) Ms. Oudghiri was at Riley until 2017.

During Spring 2017, the new superintendent, Dr. Spells, suggested to Ms. Oudghiri that he intended to promote her to a principal position at an elementary school and told her that he was going to take her "off the bench." (DE 25 at 8.) That Summer, Ms. Oudghiri called Dr. Spells and asked him where she was going to be assigned. Dr. Spells requested that she walk through Muessel and Harrison elementary schools to see what they needed. After she did, Dr. Spells asked her to come to Harrison elementary school for a meeting where he told her that he was making her the assistant principal there. Dr. Spells named Cindy Tachman as the principal of Harrison.

Ms. Oudghiri began working at Harrison Elementary in Fall 2017 and stayed there until 2019. Harrison is a failing school under Indiana state rules, and state representatives came to audit stakeholders of the school. One of the stakeholders was Wilbur Boggs, the Vice-President of the 100 Black Men organization in South Bend. Another stakeholder, Ms. Murray, told Ms. Oudghiri and Principal Tachman that Mr. Boggs complained to the state representatives that the administration did not represent the minority community the school served. He specifically targeted Ms. Oudghiri saying that she "does not look like the kids. She's not from here. She does not relate to them." (DE 25 at 9.)

Ms. Oudghiri then told Mr. Brevard, the parent liaison at Harrison, about the comments. Mr. Brevard said he wasn't surprised. Mr. Brevard also told her that a teacher asked him why

SBCSC would hire a Muslim and a Jew (Principal Tachman is Jewish) to run Harrison. Several days later, Ms. Oudghiri heard Mr. Boggs saying loudly in the hallway that, "They don't relate to the kids," presumably referring to her and Ms. Tachman. In Spring 2018, Ms. Oudghiri reported Mr. Boggs's conduct to Dr. Spells and Director of Human Resources Dr. Todd Cummings. As a result, there was an investigation into Mr. Boggs, and his group was kept out of the building for the remainder of the school year. (DE 20-2 at 21.)

Also in Spring 2018, Ms. Oudghiri received a letter from a fourth-grade teacher who sought financial support to travel on a missionary trip to Tanzania with hopes of converting Muslim children to Christianity. Ms. Oudghiri took the letter to Ms. Tachman who crumpled it up and threw into the trash. Ms. Oudghiri also complained to Dr. Cummings who responded that this was a building issue to be handled by the principal. Ms. Oudghiri did not receive any further solicitations of this kind. (DE 21 at 8.)

At the end of the school year, Ms. Oudghiri spoke with Dr. Spells about a potential promotion. She told him that she was ready for a building of her own and he responded saying that there were a couple open principal positions and that they would "see" about the promotion. (DE 25 at 9–10.) Ms. Oudghiri asked Dr. Spells if SBCSC investigated the incident with Mr. Boggs. Dr. Spells responded with a grin: "You need to get a thicker skin, Latifa. Look at me. People call me gay, and I'm not gay, because I hired the gay guy in HR." (*Id*. at 10; DE 20-1 at 73–74.)

During the Summer 2018, Ms. Oudghiri applied for principal positions at Lincoln and Coquillard but did not get either position. The Lincoln position was awarded to Tracey Streider and the Coquillard position was given to Devetta Farrow. (DE 25 at 10.)

In September 2018, Ms. Oudghiri filed a charge of discrimination with the EEOC. (DE 25 at 10.) She claimed discrimination on the basis of her religion and national origin.

During the 2018–2019 school year at Harrison, Principal Tachman became ill and was unable to return to work. Ms. Oudghiri took over and covered her duties with the assistance of two retired administrators. One of them, Principal Hurt, suggested that Ms. Oudghiri take over the school. The new Superintendent, Dr. Cummings, convened a meeting with Ms. Oudghiri, former Principal Hurt, and the dean of students, Dr. Libby Wilson, who was in the district's aspiring leaders program. (DE 25 at 10.) At the meeting, Dr. Cummings said Dr. Wilson would be promoted to a second assistant principal and that she and Ms. Oudghiri would be managing the school together in Principal Tachman's absence. Ms. Oudghiri asked if she would be getting a stipend for handling additional duties but Dr. Cummings said he could not promote her to an interim principle position or give her a stipend because there was no money. Ms. Oudghiri stated that she was not interested in additional duties without extra pay to which Dr. Cummings responded that he would hire Ms. Hurt as the principal and Ms. Oudghiri, along with Dr. Wilson, would work as assistant principals.[1] (*Id*. at 11; DE 20-1 at 76–77.)

Ms. Oudghiri worked as an assistant principal under Ms. Hurt for two months before she was reassigned by Dr. Cummings to the position of an "itinerate assistant principle" in March 2019. In 2020, she remained in this position, but didn't have many duties because the students were on e-learning. (DE 21 at 4.) She then worked at Marquette Montessori and Monroe schools as part of a cost-cutting measure and was eventually moved to Kennedy Academy where she is currently serving as an assistant principal.

---

[1] Dr. Cummings recalled the same meeting differently. In his deposition, he testified he offered the principal position to Ms. Oudghiri but she refused it. (DE 20-2 at 32.)

The SBCSC's Board has the final authority for hiring principals. Since Dr. Cummings became the Superintendent, if there's a vacancy, the Chief Academic Officer puts together a hiring team which interviews the candidates. The hiring team makes a hiring recommendation to the Superintendent who makes the recommendation to the Board. (DE 20-2 at 10.) During Dr. Spells's tenure, the process was essentially the same except that the hiring teams were assembled by different persons. (*Id*. at 10–11.)

### B.  Summary Judgment Standard

On summary judgment, the burden is on the moving party to demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That means that the Court must construe all facts in the light most favorable to the nonmoving party, making every legitimate inference and resolving every doubt in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is not a tool to decide legitimately contested issues, and it may not be granted unless no reasonable jury could decide in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence which "demonstrate[s] the absence of [a] genuine issue of material fact." *Id.* at 323. Once the moving party meets this burden, the nonmoving party may not rest on allegations or denials in its own pleading but must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1); *Beard v. Whitley Cty. REMC*, 840 F.2d 405, 410 (7th Cir. 1988). The disputed facts must be *material*, which means that they "might affect the outcome of the suit under the governing law." *Brown v. City of*

*Lafayette*, 2010 WL 1570805, at *2 (N.D. Ind. Apr. 16, 2010). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1124 (7th Cir. 1996).

### C. Discussion

#### 1. *SBCSC's Motion to Strike*

After Ms. Oudghiri responded to SBCSC's motion for summary judgment, SBCSC filed a separate motion asking to strike most of her statement of facts on the grounds that it contains numerous hearsay statements. The motion has no merit. Several examples are sufficient to demonstrate SBCSC's erroneous thinking. For instance, SBCSC believes that Mr. Boggs's statements about Ms. Oudghiri not looking like the kids and not being from "here" should be stricken. Or it wants the Court to strike the statement of the teacher who wished Ms. Oudghiri would go back to Africa. There are many more such examples, but they are not worth identifying because none of the statements singled out by SBCSC are subject to the hearsay rule as they are not being offered for the truth of the matter asserted. *See* Fed. R. Evid. 801(c)(2). Ms. Oudghiri has not offered these statements to prove that she doesn't look like the kids or that she must indeed return to Africa; she offered them because they show that some members of the school community have been hostile to her. Similarly, other statements SBCSC wants the Court to strike are properly before the Court because they were statements of the party opponent (the superintendents' statements),[2] *see* Fed. R. Evid. Rule 801(d)(2)(D) (excluding from the hearsay

---

[2] Ms. Oudghiri is wrong to argue that the hostile statements of some of the teachers were statements of party opponent. Under Federal Rule of Evidence 801(d)(2), only those authorized to speak on behalf of the party opponent or statements adopted by the party opponent or made in the course of

8

rule a "statement ... offered against the opposing party [that] ... was made by the party's agent or employee on a matter within the scope of that relationship and while it existed"); *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 823 (7th Cir. 2011) (holding that because "[t]he plaintiff's manager was involved in the decisionmaking process affecting the employment action ... her statement [was] an admission under Rule 801(d)(2)(D)" and thus admissible at summary judgment), or they are statements expressing then-existing state of mind, *see* Fed. R. Evid. 803(3); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 716 (7th Cir. 2004) (holding that a statement offered to show the state of mind of a supervisor at the time she evaluated an employee was not hearsay). As such, none of the statements SBCSC wants stricken violate the Federal Rules of Evidence and its motion to strike (DE 29) will be denied.

### 2. *Title VII*

Ms. Oudghiri claims that SBCSC discriminated against her on the basis of her religion and national origin and retaliated against her when she filed the EEOC charge in 2018 in violation of Title VII of the Civil Rights Act, which prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). In particular, she submits that SBCSC failed to promote her to a principal position and paid her less than similarly situated employees who are not in the protected class. In addition, she claims that she was demoted in 2019 to an itinerant principal position.[3]

---

conspiracy with the party opponent are deemed as statements of the party opponent. There's no evidence that any of the teachers' statements can be considered as SBCSC's own words.

[3] In her complaint, Ms. Oudghiri is asking for punitive damages, but, in her response to SBCSC's motion for summary judgment, she concedes that punitive damages aren't available for her claims. (DE 25 at 12 ("Oudghiri concedes that punitive damages are not available against the Defendant, a municipal entity.") Accordingly, the Court will grant SBCSC's motion for summary judgment on this issue. *See* 42 U.S.C. § 1981a ("A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) . . . .).

When considering summary judgment on Title VII claims, a court asks whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, or other proscribed factor made Ms. Oudghiri suffer an adverse employment action. *See Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

The Court recognizes that the *McDonnell-Douglas* framework analysis is no longer required and is now viewed simply as one way to organize and present a claim of discrimination. The Seventh Circuit has stated that plaintiffs do not have to "rely on the *McDonnell Douglas* method to carry that burden; she may well have other 'direct or circumstantial evidence that supports an inference of intentional discrimination.'" *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 929 (7th Cir. 2020) (citation omitted). Instead, plaintiffs may point to "ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment." *Joll*, 953 F.3d at 929. And as the Seventh Circuit has recognized, "[f]ew discrimination cases are so straightforward—indeed they are often factually complex and require sifting through ambiguous pieces of evidence." *Ortiz*, 834 F.3d at 765.  With a Title VII claim, the "fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination." *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014).

Because both SBCSC and Ms. Oudghiri relied on the *McDonnell-Douglas* framework in making their arguments (DE 21 at 11–13; DE 25 at 14), the Court will use the framework to address their arguments. In using the framework, however, the Court will consider all of the

evidence presented by the parties to decide whether summary judgment is warranted. *Ortiz*, 834 F.3d at 765–66 (holding "evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself" but that the decision "does not concern *McDonnell Douglas* or any other burden-shifting framework").

The *McDonnell-Douglas* analysis proceeds in three steps. First, the plaintiff carries the burden of establishing a prima facie case of discrimination. To make a prima facie case, a plaintiff must show that (1) she was a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees not in the protected class were treated more favorably. *See Martino v. W. & S. Fin. Grp.*, 715 F.3d 195, 202 (7th Cir. 2013).

If the plaintiff can establish a prima facie case, there is a presumption of discrimination and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 807 (7th Cir. 2017) (quoting *McDonnell Douglas*, 411 U.S. at 802). If the employer can articulate a legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff to produce evidence that the stated reason is mere pretext. *Id.* (quoting *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012)). Pretext "means a lie, specifically a phony reason for some action." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002) (internal quotation omitted). It does not matter whether the reason is wise or even incorrect, only whether it is honest. *Milliman v. Cty. of McHenry*, 893 F.3d 422, 433 (7th Cir. 2018).

    a.  *Statute of Limitations*

On September 19, 2018, Ms. Oudghiri filed a charge of discrimination with the EEOC alleging, in part, that SBCSC had discriminated against her by failing to promote her. She claimed that this discrimination had been ongoing since 2012. In support of its motion for summary judgment, SBCSC submits that any claims by Ms. Oudghiri concerning SBCSC's putative failure to promote her that occurred before October 24, 2017, are time-barred. (DE 21 at 14); *see Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 860 (7th Cir. 2005) (". . . Title VII provides that a charge of racially discriminatory employment practices shall be filed with the EEOC within 300 days 'after the alleged unlawful employment practice occurred.' . . . For purposes of this statute of limitations, discrete discriminatory employment actions such as . . . failure to promote . . . are deemed to have been taken on the date they occurred, even if they form part of an ongoing practice or are connected with other acts.") (citations omitted). Ms. Oudghiri responds by noting that her claims accrued after October 24, 2017: denial of two principal positions in 2018 at Lincoln and Coquillard; the refusal to name her an interim principal at Harrison during the 2018–2019 school year; making her an itinerant principal in 2019; and paying her lower wages than those of American-born, non-Muslim assistant principals. (DE 25 at 17.) Because Ms. Oudghiri has limited her claims to the period beginning in October 2017, they are not prohibited by the statute of limitations. Moreover, Ms. Oudghiri can rightfully support her timely claims with evidence outside the statutory period. *See Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 786 n.4 (7th Cir. 2004) ("[W]here . . . the plaintiff timely alleged a discrete discriminatory act . . . acts outside of the statutory time frame may be used to support that claim." (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.")).

   b. *Hostile Workplace Environment*

In the amended complaint, Ms. Oudghiri alleged that SBCSC failed to address the harassment she experienced at work as a Moroccan Muslim.[4] In its brief in support of its motion for summary judgment, SBCSC argued at length against her claim, but Ms. Oudghiri's response is silent on this issue. It appears then that Ms. Oudghiri has abandoned her harassment claim. *See Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016) ("[B]y failing to respond in any way to any of the arguments advanced by Defendants regarding counts 9, 14, 15, and 16, Plaintiffs have waived their claims."). In any case, even if the Court were to assume––without deciding—that Ms. Oudghiri experienced severe and pervasive harassment at work as a Moroccan Muslim, the undisputed facts don't suggest that SBCSC allowed them to continue. For example, when the secretary reported to Ms. Oudghiri and Principal Sanders that a teacher made racial comments, the principal disciplined the teacher. When the same secretary referred to Ms. Oudghiri as part of the principal's harem, Ms. Oudghiri rebuffed her and such comments were no longer made. When she received a solicitation to donate money for a mission trip, she gave the letter to the principal who crumpled up and threw it into the trash. Ms. Oudghiri received no other solicitations after that. After Mr. Boggs commented that she was not like the kids and did not belong at the school, he and his group were kept out of the building for the remainder of the school year. As for Principal Williams's comment that "Latifa does not believe in Jesus," it's an example of narrow-minded insensitivity but that comment constitutes the only time that any of her superiors said anything remotely hostile in relation to her being a Moroccan Muslim. In other

---

[4] Ms. Oudghiri asks the Court to treat her national origin and religion as a singular characteristic. (DE 25 at 15.)

words, she cannot be said to have suffered harassment from her supervisors. *See Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1032 (7th Cir. 2003) ("Workplace harassment must be sufficiently severe or pervasive to be actionable."). Finally, even if the teachers inviting her to speak about Boko Haram and ISIS can be construed as harassment, she did not inform anyone about those invitations. Nor did she inform anyone about the resource officer complaining about the "moderate Muslims." Accordingly, she cannot fault SBCSC for failing to do something about those incidents. *See Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 952 (7th Cir. 2005) (employers are liable for a coworker's harassment only when they have been negligent either in discovering or remedying the harassment). As a result, the Court will enter summary judgment in favor of SBCSC on Ms. Oudghiri's harassment claim.

c. *Claims of Discrimination on the Basis of National Origin and Religion*

Ms. Oudghiri presents a somewhat circular argument that SBCSC unlawfully discriminated against her. She argues that SBCSC was awash in public prejudice toward her as a Moroccan Muslim which is evidenced by the fact that she suffered adverse employment actions (not being promoted to a principal position, being demoted to an itinerant principal position, and getting paid less than her counterparts at other schools). (DE 25 at 17 ("[T]he repeated denials of principal positions in favor of employees with less experience who were not non-native Muslims is cumulative evidence that something beyond mere consideration of qualifications was afoot.").) She also argues that the teachers' hostile comments, Principal Williams's reference to her not believing in Jesus, Mr. Boggs's complaint that she is not "like one of the kids," and Dr. Spells's admonition that she needs to have a thicker skin must all be imputed to SBCSC as evidence of prohibited discrimination. Such argument is not supported by the evidence before the Court.

The parties do not address this, but, according to Dr. Cummings's undisputed testimony, only the SBCSC Board could hire principals. (DE 20-2 at 10.) However, Dr. Cummings had the authority to appoint interim principals, such as when he appointed Principal Hurt at Harrison after Principal Tachman became ill. Within this hiring and promoting structure, Ms. Oudghiri offers no evidence from which a reasonable jury could infer that those with the authority to promote her acted with discriminatory motives. Insofar as Ms. Oudghiri wants to impute to SBCSC the teachers' hostile comments, the one comment by Principal Williams, and Mr. Boggs's complaint to the state auditors, there's simply no evidence that any of those persons had influence over promotion decisions. Moreover, some of the comments were made years before the promotion decisions. *See Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 723 (7th Cir. 2008) (negative comments about women made by male assistant manager who had no supervisory authority over female counterpart were not evidence of Title VII discrimination absent showing as to their timing and connection to decision to terminate female manager's employment). Nor is there any evidence to support the cat's paw theory of liability. *See Turner v. Hirschbach Motor Lines*, 854 F.3d 926, 929 (7th Cir. 2017) ("Under a cat's paw theory of liability, the challenge is to show a causal link between the presumed unlawful animus of someone . . . who did not make the decision, and the decision itself."). As such, it's unreasonable to attribute their conduct to the decision makers at SBCSC.

It is likewise unreasonable to infer that Ms. Oudghiri was not promoted because she is a Moroccan Muslim on the grounds that Dr. Spells told her that she needs to have a "thicker skin." In the context of their conversation, the "thicker skin" comment does not suggest that Dr. Spells failed to promote her because she is a Moroccan Muslim. *See Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 721 (7th Cir. 2008) ("While [plaintiff] is right that [she] need not offer evidence of

multiple discriminatory statements by a decisionmaker, "isolated comments that are no more than 'stray remarks' in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus."). Rather, Dr. Spells was telling her that he, too, was accused of things that were not true. This remark does not have a discriminatory undertone or insinuation so as to suggest that Dr. Spells acted with discriminatory intent. In fact, apart from a conclusory assertion that the "thicker skin" comment betrays Dr. Spell's discriminatory animus, Ms. Oudghiri's brief does not explain how a jury can reasonably infer from it a Title VII violation.

Shifting gears to the *McDonnel-Douglas* framework, the parties disagree whether Ms. Oudghiri has established a prima facie case of discrimination. They focus on the fourth prong of the test: whether similarly situated employees not in the protected class were treated more favorably, that is, whether they were promoted to the principal positions while Ms. Oudghiri was not. "Employees are similarly situated if they are directly comparable in all material respects. The inquiry is fact intensive, requiring consideration of the circumstances as a whole." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006) (citations omitted). However, Ms. Oudghiri's discussion on this subject is limited to one sentence: ". . . the repeated denials of principal positions in favor of employees with less experience who were not non-native Muslims is cumulative evidence that something beyond mere consideration of qualifications was afoot." (DE 25 at 17.) Ms. Oudghiri does not identify these purported comparators, let alone describe how they're similarly situated to her. Without such comparators, Ms. Oudghiri has failed to raise an inference of discrimination because she has not shown that persons who were otherwise similar to her, except for their nationality and religion, were promoted while she was not.

For all these reasons, the Court will grant summary judgment in favor of SBCSC on Ms. Oudghiri's claim that she was not promoted to the principal position because she is a Moroccan Muslim.

Next, Ms. Oudghiri insists that her appointment as an itinerant assistant principal was a demotion resulting from discriminatory intent. But she does not explain why the itinerant principal position constitutes a reduction in rank or status. The Seventh Circuit has cautioned that "not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an ... employee did not like would form the basis of a discrimination suit." *Porter v. City of Chi.*, 700 F.3d 944, 954 (7th Cir. 2012) (quotation marks and citation omitted). Instead, for a materially adverse change to have taken place—a prerequisite condition for a Title VII lawsuit—there must have been "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id*. (quotation marks and citation omitted). It is clear that Ms. Oudghiri was unhappy to be an itinerant assistant principal but beyond that her brief is silent. She does not suggest that her salary or benefits were reduced or that she suffered a loss of status. While she does state that in this position she didn't have many duties, she readily acknowledges that this was due to student switching to e-learning as a result of the pandemic. (DE 21 at 4.) Because Ms. Oudghiri has not shown that she suffered an adverse employment action when she was appointed to the itinerant assistant principal position, the Court will grant summary judgment in favor of SBCSC on Ms. Oudghiri's claim that she was demoted because she is a Moroccan Muslim.

d.   *Disparate Pay*

Ms. Oudghiri claims that she was paid less in wages than other assistant principals because she is a Moroccan Muslim. She seeks to establish this claim by relying on the *McDonnel-Douglas* framework. So, here too, she must establish a prima facie case of discrimination, and if she does, the burden then shifts to SBCSC to provide legitimate reasons for the wage disparity. Ms. Oudghiri can counter those reasons with evidence showing that they are a mere pretext for discrimination. *Cullen v. Indiana Univ. Bd. of Trustees*, 338 F.3d 693, 704 (7th Cir. 2003). As in the context of her failure to be promoted claim, the crux of Ms. Oudghiri's prima facie case rests with the question of whether similarly situated employees outside of her protected class were paid more than she was. To reiterate, the "similarly-situated inquiry is flexible, common-sense, and factual. It asks essentially, are there enough common features between the individuals to allow a meaningful comparison?" *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012). "Whether a comparator is similarly situated is usually a question for the fact-finder, and summary judgment is appropriate only when no reasonable fact-finder could find that plaintiffs have met their burden on the issue." *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 629 (7th Cir. 2018) (citations and quotations omitted). "The purpose of the inquiry is to eliminate other possible explanatory variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable—discriminatory animus." *Skiba v. Illinois Central Railroad Company*, 884 F.3d 708, 723 (7th Cir. 2018) (citations and quotations omitted). While similarly situated parties need not be "identical in every conceivable way," they "must be directly comparable to the plaintiff in all material respects." *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019). "This analysis entails a comparison of factors including whether the employees had the same supervisor, were

subject to similar standards, and had comparable experience and qualifications." *Fore v. Bostik Findley, Inc.*, 149 F. App'x 513, 515 (7th Cir. 2005).

SBCSC argues that Ms. Oudghiri has not presented a single similarly situated person outside of her protected class who is paid more than she is. In her brief, Ms. Oudghiri lists eight persons as being similarly situated to her, but who are paid a greater base salary than she: Christopher Berg, Tony Brooks, Christina Campos, Trent Chamblis, Jeanne Dietrich, Robert Smith, Darice Austin-Phillips, and Davetta Farrow. Six of these persons can be easily disregarded: Christopher Berg is a principal, not an assistant principal; and, other than naming them, Ms. Oudghiri provides no information about Tony Brooks, Trent Chamblis, Jeanne Dietrich, Robert Smith, and Davetta Farrow so that the Court cannot draw any meaningful comparisons between them and her. *See Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012) ("There must be 'enough common factors ... to allow for a meaningful comparison in order to divine whether intentional discrimination was at play.'" (quoting *Barricks v. Eli Lilly and Co.*, 481 F.3d 556, 560 (7th Cir. 2007)). Next, the Court finds that Darice Austin-Phillips is not similarly situated to Ms. Oudghiri. Ms. Austin-Phillips is an assistant principal at Harrison elementary school which is in the Transformation Zone, where her salary is set independently of SBCSC.[5] This leaves one last purported similarly situated persons: Christina Campos. According to Ms. Oudghiri, Ms. Campos is an assistant principal who started in that position two years after Ms. Oudghiri became an assistant principal. Ms. Oudghiri acknowledges, however, that Ms. Campos was made a principal for a year before resuming as an assistant principal, and, according to SBCSC, she kept her principal's salary. Moreover, Ms. Campos has an Educational Specialist

---

[5] A number of SBCSC schools have become part of Transformation Zone to improve academic performance. The Transformation Zone is a legally separate entity although SBCSC retains some oversight. The Transformation Zone is responsible for hiring its own employees. (DE 21 at 2.)

Degree (Ed.S.) which is a more advanced degree than a master's degree.[6] (DE 30-2, Def.'s Ex. 6 – Aff. Zook.) In light of these differences, and because Ms. Oudghiri has not presented a single similarly situated person, who is outside her protected class and who is paid more than she is, she has failed to show a prima facie case of discrimination in relation to her wages. Accordingly, the Court will grant SBCSC's motion for summary judgment on this issue.

e. *Retaliation*

Ms. Oudghiri next claims that SBCSC did not promote, and actually demoted her, in retaliation for her charge of discrimination with the EEOC in 2018. To succeed on a Title VII retaliation claim, a plaintiff must show: 1) she engaged in a statutorily protected activity; 2) a materially adverse action taken by her employer; and 3) a causal connection between the two. *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016). In evaluating a retaliation claim, the court should conduct a straightforward inquiry, asking whether the record contains sufficient evidence to permit a reasonable factfinder to conclude that a retaliatory motive caused the materially adverse action. *Abrego v. Wilkie*, 907 F.3d 1004, 1014 (7th Cir. 2018) (citing *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016); *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

Causation in the Title VII retaliation context refers to but-for causation. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.") A plaintiff can point to both direct and circumstantial evidence to demonstrate

---

[6] Ms. Oudghiri has a Master's degree in education.

causation and survive summary judgment on a retaliation claim. *Abrego*, 907 F.3d at 1015 (citing *Gracia v. SignmaTron Int'l, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016); *Lord*, 839 F.3d at 563). Relevant causation evidence may include suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual. *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019).

As in the context of her employment discrimination claim, so here, there's no evidence that Ms. Oudghiri suffered an adverse employment action when she was made the itinerant assistant principal. Accordingly, no reasonable jury could find that SBCSC retaliated against her when she was appointed to the position of itinerant assistant principal.

Furthermore, no reasonable jury could find that SBCSC's failure to promote her to a principal position at Harrison elementary was retaliation against her for filing the EEOC complaints. Her argument regarding this claim is contained in only one sentence of her brief and rests on a single factor: she was denied the principal position at Harrison shortly after filing the EEOC complaint. (Pl.'s Br. Opp. MSJ, DE 25 at 21 ("Oudghiri's evidence on the retaliation claim includes the timing of the Harrison position, which was shortly after her filed charge of discrimination.") But suspicious timing will "rarely be sufficient in and of itself to create a triable issue. The reason is obvious: suspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (quotation marks, brackets, and citations omitted). "Accordingly, for a suspicious-timing argument alone to give rise to an inference of causation, the plaintiff must demonstrate that an adverse employment action follows close on the heels of protected expression, and the plaintiff must show that the person who decided to impose the adverse action

knew of the protected conduct." *Id*. (quotation marks, brackets, and citations omitted). In addition, "[f]or an inference of causation to be drawn solely on the basis of a suspicious-timing argument, we typically allow no more than a few days to elapse between the protected activity and the adverse action." *Id*.

This presents two problems for Ms. Oudghiri's attempt to defeat summary judgment on the issue of retaliation. First, she filed her EEOC charge in September 2018, and the evidence does not suggest that her meeting with Dr. Cummings regarding the leadership at Harrison took place mere days after the complaint was filed.[7] Second, there's no evidence that Dr. Cummings knew that she had filed a charge with the EEOC. (DE 20-2 at 29–31 (Dr. Cummings stating that he doesn't recall knowing that Ms. Oudghiri filed an EEOC charge and that he had no role in investigating her charge).) Yet, "[i]n order to demonstrate that a defendant was motivated to retaliate based on the plaintiff's protected activity, the plaintiff must first produce evidence that the defendant had actual knowledge of the protected activity." *Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 512 (7th Cir. 2021). As a result, Ms. Oudghiri lacks evidence to raise a genuine issue of material fact in support of causation for her retaliation claim as it relates to becoming a principal at Harrison. Ms. Oudghiri also suggests in passing that she was denied other principalship positions due to retaliation, but she offers neither argument nor any evidence to support that claim. (DE 25 at 21.) Generally, undeveloped argument are considered to be waived, *see Wehrs v. Wells*, 688 F.3d 886, 891 n.2 (7th Cir. 2012) (undeveloped and unsupported arguments are considered waived), but here there's not even an argument to consider. Therefore, Ms. Oudghiri has not raised an inference of prohibited retaliation regarding other principalship

---

[7] The exact dates of any events are rarely mentioned in the parties' briefs. Most timing references are to the  school years or seasons of the year. Such general references have made it difficult for the Court to track the course of events and their proximity to each other.

positions. For all these reasons, the Court will grant SBCSC's motion for summary judgment on the retaliation claim.

**D. Conclusion**

For these reasons, the Court GRANTS SBCSC's motion for summary judgment (DE 20).

SO ORDERED.

ENTERED: March 22, 2022

_____/s/ JON E. DEGUILIO_____
Chief Judge
United States District Court